## THE EXCELSIOR.[1]

### BRYANT v. THE EXCELSIOR.

*(District Court, E. D. New York. December 31, 1887.)*

1. COLLISION BETWEEN STEAM AND SAIL—FAILURE TO KEEP COURSE—LIGHTS.
   On a clear night a schooner, on a course of N. by E., bound into the port of New York, was run into by a steamer bound to sea. On suit brought against the steamer for the damage, the evidence showed that the schooner had not held her course; that there was no green light on her as she approached the steamer, and that the mate of the schooner, who was on deck, had with him a white light, which was seen on the steamer, and gave rise to the belief that the schooner was going in the same direction as the steamer. *Held*, that the steamer was without fault, and that the libel should be dismissed.

2. SAME—RULES OF NAVIGATION—NEW YORK—BELOW THE NARROWS.
   Vessels navigating the waters below the New York Narrows are governed by the international rules of 1885.

In Admiralty. Libel for damages by collision.

Libel by Ivanhoe C. Bryant against the Excelsior, to recover damages sustained by reason of a collision of libelant's schooner with the steamship Excelsior, alleged to have been occasioned by the negligent navigation of the latter.

*Goodrich, Deady & Goodrich*, for libelant.

*Charles H. Tweed* and *R. D. Benedict*, for claimant.

BENEDICT, J. After a careful examination of the testimony in this case I am unable to see how the libelant can recover. The points in controversy are: (1) Whether the schooner, coming up the bay of New York, on a course north by east, held her course when approaching the steamer, as the libelant contends, or whether she changed her course to westward, as the claimant contends; (2) whether the schooner's sidelight was burning as she approached the steamer; (3) whether the steamer was in fault for not seeing the schooner sooner than she did; (4) whether the schooner displayed a white light to the steamer as she approached; (5) whether the steamer stopped her speed as soon as she should have done.

Upon the question first stated, respecting a change of course on the part of the schooner, it seems to be proven by the lookout, as well as by the mate, of the schooner; for both of these witnesses say that as they approached the steamer, she was displaying her red light until the vessels were close together, and that the green light was only seen when the bow of the schooner passed the bow of the steamer, then about to strike on the schooner's starboard side. This testimony from the schooner is in harmony with the testimony from the steamer, and shows that, at the time of the collision, the schooner was on a course from east to west across the steamer's course. If this be so, there must have been a change of course on the part of the schooner.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

As to the second of the questions above stated, viz., whether the schooner's green light was burning as she approached the steamer, it is to be noticed that, inasmuch as the witnesses from the schooner agree in saying that immediately after the collision the green light was not burning, the question presented by the libelant is, when did the light go out? There are, in the testimony, some curious facts about the schooner's lanterns, that in the minds of some would raise the question whether the lantern was in the starboard light-box at the time of the collision. The doubt on this point is, to some extent, confirmed by the fact that at least one witness from the steamer says that before the vessels separated he saw the starboard light-box to be without a lantern; and the further fact, of more significance, that one of the schooner's crew, well situated to know the fact, is unwilling to say that there was a green light—differing in this respect from others who say they saw the green light burning just before the collision. But considering the issue to be that presented by the libelant, viz., when the green light went out, the weight of the testimony goes to show that there was no green light burning on the schooner as she approached the steamer.

As to the third question above stated, viz., whether the steamship saw the schooner as soon as was possible,—although the testimony of the witness Long has not passed unnoticed,—it seems that little need be said, inasmuch as want of lookout is not charged in the libel, and the libelant concedes in terms that "it is apparent that the steamer was warned of the proximity of the schooner, and knew of her presence when she was a mile away." Such being the fact, the collision cannot be attributed to want of lookout on the part of the steamer.

As to the fourth question stated, viz., whether the schooner as she approached the steamer displayed a white light, it is conceded that the mate of the schooner, who was at the top-gallant forecastle, overhauling the anchor and chains, had with him a lighted lantern. It is, at the same time, denied that this lantern was so placed as to be visible to the steamer. But numerous witnesses from the steamer say they saw the light, and the light was a matter of discussion on the steamer before this collision. In the face of the weight of testimony produced from the steamer, in regard to a white light seen on the schooner as she approached, I see no way to decide that such a light was not exhibited by the schooner. The mate of the schooner, who was recalled to withdraw his previous statement that, previous to the collision, he had a light at the forecastle, is contradicted by the pilot of the schooner, who agrees with the first statement of the mate that it was before the collision that the light was used forward. The exhibition of such a light on board the schooner would naturally mislead the steamer, and give rise to the belief that the vessel exhibiting it was going the same way as the steamer. Such was the belief of the master of the steamer, as he testified, and the existence of good ground for such a belief absolves him from blame for not sooner stopping his vessel.

In regard to the argument presented in the supplemental brief for the libelant, that the schooner, in exhibiting a white light, was complying

with the rule prescribed in section 4234 of the Revised Statutes,—an argument which abandons the contention that the mate's lantern was not visible,—I remark that, in my opinion, the waters below the New York Narrows are not to be deemed harbor waters, and so excepted from the effect of the international rules of 1885, by the second section of that act. As I construe the rules of 1885, vessels navigating those waters are governed by those rules. The remarks of Judge BROWN in the case of *The Aurania*, 29 Fed. Rep. 102, respecting the effect of the act of 1885, in the lower bay, are here in point.

Moreover, in this instance, it is plain that the mate's lantern was not exhibited by him with a view of complying with the old rules, nor was it taken by the master of the steamer to be a light exhibited in compliance with those rules. It was exhibited by the mate through carelessness. That carelessness misled the steamer, and induced her to keep up her speed, which otherwise might have been slackened sooner than it was.

The libel must be dismissed, and with costs.