THE EXCELSIOR.

BRYANT *v.* THE EXCELSIOR.

(*Circuit Court, E. D. New York.* July 10, 1889.)

COLLISION—BETWEEN STEAM AND SAIL—LIGHTS—NEW YORK BAY.

A steamer, properly manned, was going down the bay of New York, bound to sea. The night was clear, but dark, and the steamer, heading S. by W., was running at about 9 or 10 knots per hour. The master noticed a white light ahead, but upon examination could discover no colored lights. He concluded that the light was on a vessel going in the same direction with the steamer, and, determining to pass on the west side, changed his course half a point. After going ahead a few minutes, he discovered that something was wrong, and immediately stopped his engine, and reversed, but it was too late to avoid collision. The vessel carrying the white light proved to be a schooner bound into port, heading N. by E. After seeing the steamer's lights she luffed a little. *Held*, that the collision was caused by the faults of the schooner in exhibiting a white light, and in failing to display a green light, as required by international rules 1885. Affirming 33 Fed. Rep. 554.

In Admiralty. On appeal from district court. See 33 Fed. Rep. 554.
*Goodrich, Deady & Goodrich*, for libelants.
*Charles H. Tweed* and *Robert D. Benedict*, for claimant.

BLATCHFORD, Justice. In this case I find the following facts:

1. On the evening of December 14, 1886, the steam-ship Excelsior was going down the bay of New York, bound to sea. She was well and competently manned, tackled, and appareled, and her lights were set and burning according to law. Her master, who was a competent navigator, was on the bridge, and in charge of her navigation. She had a competent lookout,—the first mate,—properly placed forward, and at-

tending to his duties, and competent men were in charge of her wheel and of her engine.

2. The night was clear but dark, there being no moon, and the wind was about west, a fresh breeze. The tide was flood.

3. The steam-ship was running at the rate of about 9 or 10 knots an hour. She was going down the channel below the Narrows, heading about south by west, and having the Chapel Hill and Conover Beacon range-lights ahead of her and in range.

4. The lookout of the Excelsior, and her master, saw a white light ahead of her, a little on her port bow. It was reported by the lookout, and examined by the master with his night glasses, and was made out by him to be a white light. No colored light was visible. The master of the Excelsior concluded, as he had the right to do, that the light was upon a vessel which was going down the bay in the same direction the Excelsior was going. This light was seen at a sufficient distance to have enabled the Excelsior to keep clear of the vessel, if the latter had not misled the Excelsior as to her course.

5. As there were visible the lights of other vessels coming up on the eastward side of that light, the master of the Excelsior determined to pass the vessel which carried that light on the west side of her, and he accordingly ported the Excelsior's wheel, and changed her course half a point to the westward, and then steadied her wheel, and went on for several minutes, when, from the appearance of the vessel and the reflection of lights upon her, he was led to think there was something wrong, and the helm of the Excelsior was at once put hard a-port, and her engine was immediately stopped and reversed.

6. Before her headway could be completely stopped, her stem struck the vessel on the starboard side, aft of the fore rigging, at the angle shown on the diagram of the witness Reed, and cut in to the main hatch.

7. The vessel was the schooner Hannah F. Carlton, belonging to the libelants. She was going about five knots an hour, bound up the bay, and had been heading on a course of about north by east or north half east. After the Excelsior's lights were seen by her, she luffed up a little.

8. The schooner did not exhibit to the Excelsior the green light required by law.

9. The schooner exhibited to the Excelsior, before the collision, a white light.

10. The master of the Excelsior was misled by the exhibition of such white light, and by the failure to exhibit a green light, on the part of the schooner.

11. The measure adopted by the master of the Excelsior, of porting his wheel, would have been sufficient for the avoiding of the schooner, if the latter had been going down the bay, as was indicated by the failure to show a green light and the exhibition of the white light, instead of coming up the bay.

12. The schooner was at all times before the collision on the port bow of the Excelsior.

On the foregoing facts I find the following conclusions of law:

1. The schooner was in fault in exhibiting to the Excelsior such white light.

2. The schooner was in fault in failing to exhibit to the Excelsior a green light, as required by law.

3. The collision was caused by such fault or faults on the part of the schooner.

4. The master of the Excelsior had the right to understand, from seeing a white light and not seeing a green light on the schooner, that she was not coming towards the Excelsior, but was going away from her, on the same course.

5. The Excelsior was free from fault.

6. The libel should be dismissed, with costs of the district court, taxed at $281.20, and costs of this court, to be taxed.