## THE FURNESSIA.

### (District Court, S. D. New York. May 4, 1905.)

COLLISION—STEAMSHIP AND SCHOONER CROSSING—EXCESSIVE SPEED AND WANT OF EFFICIENT LOOKOUTS IN FOG.

A steamship approaching New York at night in a fog came into collision with a crossing schooner 15 miles east of Fire Island Lightship. Both vessels were sounding fog signals. The steamship was admittedly going at a speed of six knots, and had a lookout on the forecastle head, and another in the crow's nest on the foremast, but neither saw nor heard the schooner until she was seen from the bridge, when quite near. At this time a white light was seen on the schooner nearly ahead, which was mistaken for a stern light, and the steamship changed her course, but

had been little affected thereby at the time of collision. *Held*, that the steamship was in fault for excessive speed and want of efficient lookouts; that the schooner would not be adjudged in fault because the mate, in the extremity of the collision, set out a false and misleading light, it being doubtful whether or not it contributed in any way to the collision, which was fully accounted for by the plain faults of the steamship.

[Ed. Note.—For cases in point, see vol. 10, Cent. Dig. Collision, §§ 152–156.]

In Admiralty. Suit for collision.

MacFarland, Taylor & Costello, for libellants.

Robinson, Biddle & Ward and W. S. Montgomery, for claimant.

ADAMS, District Judge. This action was brought by John Bernet and Richard K. Snow, the part owners and agents of the schooner William Bisbee, to recover the damages arising from a collision between the schooner and the steamship Furnessia about 1:45 o'clock A. M. of the 15th day of May, 1904, some 15 miles east of Fire Island Lightship in the Atlantic Ocean.

The Bisbee, loaded with oak timber and a small amount of general cargo, was bound from Gallick's Landing, Virginia, to Rockland, Maine. The steamship, with passengers and general cargo, was bound from Glasgow to New York. The weather before and at the time of collision was foggy, dense according to the steamship's contention, but light according to the schooner's.

The schooner was on the starboard tack and carrying full sail, fore sail, main sail and spanker, with 3 top sails, 4 stay sails and 3 jibs. She was not making very much progress, however, probably 3 knots at the utmost, as there was a very light wind from the eastward. The mate was steering and a lookout was stationed on the forecastle head. The latter was using a mechanical fog horn, of a proper size and type. She also had her lights duly set and burning.

The steamship ran into a haze shortly after midnight which thickened into a fog about 20 minutes before the collision. Her compass course was West by North, 2 degrees North, which allowing for deviation, gave the steamship practically a West course. She was at first proceeding at her full speed of 14 or 15 knots but reduced her speed twice, so that, it is claimed, she was going at the rate of 6 knots at the time of collision. She had a lookout stationed on the forecastle head and another in the crow's nest on the foremast. The fog whistle was duly blown. According to the testimony of the navigating officers, the first knowledge they had of the vicinity of the schooner was seeing a white light, less than a point on the steamship's port bow, in close proximity, which they took to be a ship's stern light. The wheel was put hard-a-port to clear the vessel which was supposed to exhibit the light, and when the steamship was beginning to feel the influence of the helm, a green light was seen on the port bow, whereupon the steamship was reversed at full speed, but it was too late to check her headway materially and she struck the schooner a hard blow a little abaft amidships on her starboard side, which turned her over.

The members of the schooner's crew were obliged to take to the boat which hung at her davits astern. They thus reached the steamship and were taken aboard and brought to New York.

The schooner's contention is that the steamship was solely at fault for the collision, principally in that she did not have sufficient lookouts and was proceeding too fast in a fog.

The steamship's contention is that the collision was solely produced by the schooner exhibiting a false light which misled the steamship into changing her course, bringing about the collision.

The steamship did not take the testimony of her lookouts but they were hunted up by the schooner and examined on her behalf. Their testimony does not seem to be of much importance, as there are circumstances which tend to discredit the witnesses and I do not consider it necessary to resort to their statements in disposing of the case, as taking the steamship's own testimony, she should be condemned for proceeding at an undue speed in a dense fog and in not having sufficient lookouts. If her speed was only 6 knots, it was too much in such a fog, and the fact that she claims the first knowledge she had of the presence of the schooner was by observation from the bridge, suffices to condemn her navigation in such respect. The schooner had a mechanical fog horn which she was using some time before the collision, but it was not heard on the steamship until the collision was imminent.

The difficult question in the case is concerning the exhibition of an irregular light by the schooner. When the steamship's presence became known to those on the schooner, the mate, who was then in charge and steering her, took the light out of the binnacle, and set it on top of the house, where it remained until nearly the time of the collision, when it was put back into the binnacle. The mate explains this by stating that he was afraid of steamers and always used this precaution. It was very bad practice on his part and if it had any effect in producing the collision, the vessel should be condemned for it. The steamship claims that she supposed that the light was one of an overtaken vessel shown in conformity with Art. 10 of the sailing rules, which provides:

"Art. 10. A *vessel* which is being overtaken by another shall show from her stern to such last-mentioned *vessel* a white light or a flare-up light.

The white light required to be shown by this article may be fixed and carried in a lantern, but in such case the lantern shall be so constructed, fitted, and screened that it shall throw an unbroken light over an arc of the horizon of twelve points of the compass, namely, from six points from right aft on each side of the vessel, so as to be visible at a distance of at least one mile. Such light shall be carried nearly as practicable on the same level as the side lights."

Art. 1 provides:

"The rules concerning lights shall be complied with in all weathers from sunset to sunrise, and during such time no other lights which may be mistaken for the prescribed lights shall be exhibited."

And see The Excelsior (D. C.) 33 Fed. 554, affirmed (C. C.) 39 Fed. 393; The Palinurus, L. R. 13 P. D. 14.

The steamship's change of course to starboard tends to show that she was misled by the white light, but she was then apparently her-

self in fault, in that she had, by reason of her excessive speed of 6 knots as admitted, and it was probably more, and want of efficient lookouts, approached too close to the schooner. The change of course on the steamship's part was slight, said by her wheelsman to have been less than a point and by her officers between 1 and 2 points. The wheelsman was probably correct. If it had been made in the other direction, the steamship would have gone astern of the schooner and the collision been avoided. Without any change, the collision would probably have taken place by the steamship striking further aft on the schooner, but it is not profitable to speculate about what might have taken place, if something else had been done. What was done, was a steamship striking a sailing vessel in a fog, proximately through her own excessive speed and want of efficient lookouts. The schooner exhibited a false and misleading light in the extremity of the collision. The effect of such exhibition is too doubtful to make the schooner bear any part of the loss therefor. The collision is too well accounted for by the steamship's plain faults to allow a division of the damages.

Decree for the libellants, with an order of reference.